UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| RIMA RADWAN and NADER NAJEM,<br><br>Plaintiffs,<br><br>v.<br><br>NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, THE MORTGAGE LAW FIRM, A PROFESSIONAL LAW CORPORATION, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: SACV 21-00269-CJC(KESx)<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT [Dkt. 30] |

## I. INTRODUCTION

In this case, Plaintiffs Rima Radwan and Nader Najem challenge as unlawful the foreclosure of their home in Coto de Caza, California. (Dkt. 1-2 [Complaint].) In short, they allege that Defendants wrongfully instituted foreclosure proceedings against them even though they had a complete loss mitigation application pending. Before the Court is

Defendants' motion to dismiss portions of Plaintiffs' First Amended Complaint. (Dkt. 30 [hereinafter "Mot."].) For the following reasons, Defendants' motion is **GRANTED IN PART AND DENIED IN PART**.[1]

## II. BACKGROUND

In October 2016, Plaintiffs executed a $1.32 million promissory note secured by a deed of trust encumbering the real property located at 8 Joliet Drive, Coto De Caza, California 92679 (the "Property"). (Dkt. 24 [First Amended Complaint, hereinafter "FAC"] ¶ 45, Ex. B.) Plaintiffs stopped making payments in August 2019. (*Id.* ¶ 51.)

In June 2020, Plaintiffs applied for mortgage assistance under California's Homeowner Bill of Rights ("HBOR") and the Real Estate Settlement and Procedures Act ("RESPA"). (*Id.* ¶¶ 56–57, Ex. D.) They were having trouble making payments due in part to an asset freeze associated with a Federal Trade Commission enforcement action in which they were defendants. (*Id.* ¶ 59.)[2]

On June 11, 2020, Defendants sent Plaintiffs a letter indicating that their application was incomplete. (*See, e.g.*, FAC Ex. F ["However, because you have not provided all the documentation previously requested, your response package is considered incomplete. If we do not receive the required documents by 07/11/2020, we may conclude that you have withdrawn your request for a loss mitigation program and may resume other means to collect any amounts due on your account."].)

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for June 21, 2021, at 1:30 p.m., is hereby vacated and off calendar.

[2] In the end, the FTC obtained a $27 million judgment against Plaintiffs for cheating student loan borrowers out of $31,140,943.00 in violation of the Federal Trade Commission Act and the Telemarketing and Consumer Fraud and Abuse Prevention Act. (Dkt. 31, Ex. B at ¶¶ 7–13.)

In September 2020, Defendant The Mortgage Law Firm, PLC recorded a Notice of Default and Election to Sell Under Deed of Trust, which Plaintiffs allege was illegal. (FAC ¶ 83, Ex. G.)

On September 30, 2020, Defendants again sent Plaintiffs a letter stating that they had not "provided all the documentation previously requested" and the application was still considered incomplete. (*Id.* ¶ 95.) On December 8, 2020, though, Defendants sent Plaintiffs a letter stating that their application for loss mitigation assistance "is already complete and additional documents are not required at this time. However, if during our review it is determined supplemental documents are needed, we will reach out to you to obtain." (*Id.* Ex. W.)

On December 17, 2020, a Notice of Trustee's Sale was recorded against the Property which scheduled a trustee's sale in January 2021. (*Id.* ¶¶ 137–39, Ex. X.) Defendants later cancelled the foreclosure sale. (*Id.* ¶ 147.)

On December 29, 2020, Defendants advised Plaintiffs' counsel that Plaintiffs' application remained incomplete because Plaintiffs still "needed to provide a letter of explanation, signed and dated, regarding all additions of $1000 or more that are not payroll deposits and to complete the financial worksheet and include each individual's gross and net household income." (*Id.* Ex. AA at 36.)

On January 8, 2021, Plaintiffs filed this case, alleging that Defendants improperly began the process of foreclosure even though Plaintiffs had submitted a complete loss mitigation application, citing the December 8, 2020 letter. Plaintiffs assert claims for (1) violations of Regulation X of RESPA, (2) violations of the HBOR as a servicer and (3) trustee, (4) violations of the Fair Debt Collection Practices Act as a trustee, (5) violations of the California Rosenthal Fair Debt Collection Practices Act (the

"Rosenthal Act"), (6) negligent loan servicing, (7) unfair practices under California's Unfair Competition Law ("UCL"), California Business & Professions Code Section 17200, *et seq.*, and (8) declaratory relief. (*Id.*)

On January 14, 2021, Plaintiffs' counsel sent Defendants a Notice of Error ("NOE"). (FAC ¶ 148, Ex. Y.) The NOE stated that Defendants "failed to provide the require[d] response" to Plaintiffs' complete loan mitigation application "and final determination of [Plaintiffs'] loss mitigation application," and recorded an illegal Notice of Default on September 14, 2020 and an illegal Notice of Trustee's Sale on December 18, 2020." (*Id.* Ex. Y at 2.) On March 19, 2021, Defendants responded that their records showed that Plaintiffs' loss mitigation application was incomplete. (*Id.* Ex. AA at 2.) On March 26, 2021, Plaintiffs' counsel sent Defendants a second NOE, asserting that Defendants failed to acknowledge their December 8, 2020 letter stating that Plaintiffs' application was complete. (*Id.* at 3.)

On February 17, 2021, Plaintiffs' counsel sent Defendants a Request for Information ("RFI") requesting Plaintiffs' payment history, escrow history, copies of Plaintiff's loan mitigation applications, and communications, including approvals, denials, acknowledgements, and notices regarding those applications. (*Id.* ¶ 150, Ex. Z.)

On February 25, 2021, Shellpoint informed Plaintiffs that they could not be reviewed for a loan modification because Plaintiffs failed to submit all of the required documentation in their application. (FAC ¶ 152, Ex. BB ["We were unable to complete the evaluation of your loan because we did not receive all of the required documentation."].) Plaintiffs allege that the letter "fails to set forth what items are missing" and to identify a single point of contact. (*Id.* ¶ 153.)

//

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims. The issue on a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). To survive a motion to dismiss, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must contain well-pleaded factual allegations, not legal conclusions, that "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## IV. DISCUSSION

Defendants move to dismiss Plaintiffs' claims under (1) Regulation X of RESPA, (2) HBOR, (3) the Rosenthal Act, for (4) negligent servicing and under (5) the UCL.

### A. Regulation X of RESPA

Plaintiffs allege that Defendants violated Regulation X of RESPA by (1) "fail[ing] to exercise reasonable diligence by not providing Plaintiffs with accurate information regarding Plaintiffs' loss mitigation application, in violation of 12 C.F.R.

§ 1024.41(b)(1), (2) failing to acknowledge receipt of the loss mitigation application, in violation of 12 C.F.R. § 1024.41(b)(2), (3) "repeatedly sending letters falsely claiming the Plaintiffs Loss Mitigation Application was missing documents" and failing to provide due dates, in violation of 12 C.F.R. § 1024.41(b)(3), (4) failing to evaluate Plaintiffs for all available loss mitigation options, in violation of 12 C.F.R. § 1024.41(c)(1), (5) failing to consider and treat Plaintiffs' June 8, 2020 loss mitigation request as "complete" as required by Regulation X, in violation of 12 C.F.R. § 1024.41(c)(2)(iv), (6) failing to notify Plaintiffs (a) that Plaintiffs' September 28, 2020 loss mitigation application was complete, (7) recording the Notice of Default on September 16, 2020, (8) failing to properly respond to Plaintiffs' first NOE, and (9) failing to respond to Plaintiffs' RFI. (FAC ¶¶ 175–209.)

Defendants argue that Plaintiffs' first claim for violation of RESPA Regulation X fails to the extent that it is based on Defendants' failure to properly respond to the NOEs and RFI because QWRs concerning loan modification applications are excluded from coverage under these sections. (Mot. at 6–8.) Section 2605 of RESPA requires mortgage loan servicers to respond to "qualified written request(s)." 12 U.S.C. § 2605(e). A QWR is a "written request from the borrower . . . for information relating to the servicing of such loan." *Id.* § 2605(e)(1)(A). RESPA requires the servicer of a federally related mortgage loan to provide a timely written response to inquiries from borrowers only when those inquiries regard the *servicing* of their loans. *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665 (9th Cir. 2012). In *Medrano*, the Ninth Circuit concluded that "[a] request for modification of a loan agreement . . . does not concern the loan's servicing," and a servicer need not respond to them. *Id.* at 667–68.

Plaintiffs argue that the 2014 amendments to Regulation X broadened the definition of "servicing" under RESPA, so that loan modification requests are now a proper subject of QWRs. (Opp. at 7.) The Court is not persuaded. Regulation X did not

change the definition of servicing under RESPA. And even after Regulation X, courts in the Ninth Circuit have continued to follow *Medrano*. *See, e.g.*, *Rizk v. Residential Credit Sols., Inc.*, 2016 WL 6211727, at *3 (C.D. Cal. Apr. 12, 2016) ("Case law makes clear that concerns over loan modification are not a proper subject matter of QWRs, which should raise issues pertaining only to loan servicing.") (collecting cases); *Cruz v. Freedom Mortg. Corp.*, 2018 WL 6118532, at *5 (C.D. Cal. May 3, 2018) ("Plaintiff's QWRs did *not* relate to the servicing of his loan, but instead to his application for a short sale."). Applying *Medrano*, to the extent Plaintiffs' claim for violation of Regulation X of RESPA is predicated on violations of regulations relating to QWRs—i.e., the eighth and ninth bases for Plaintiffs' RESPA claim listed above—Plaintiffs' RESPA claim fails.

### B. HBOR

Plaintiffs allege that Defendants violated several sections of California's HBOR. (FAC ¶¶ 216–64.) A plaintiff alleging a violation of the HBOR may bring a claim for injunctive relief if a foreclosure sale has not yet occurred, and a claim for damages if one has occurred. Cal. Civ. Code § 2924.12(a), (b). However, "a plaintiff is only entitled to injunctive relief as to a pending foreclosure sale." *Tobin v. Nationstar Mortg., Inc.*, 2016 WL 1948786, at *11 (C.D. Cal. May 2, 2016). Because no foreclosure sale is pending here (FAC ¶ 147), Plaintiffs are not entitled to relief under the HBOR. *See id.*; *Johnson v. Select Portfolio Servicing, Inc.*, 2016 WL 837895, at *3 (C.D. Cal. Mar. 3, 2016) (granting motion to dismiss without leave to amend when the plaintiffs were not entitled to damages because there had been no foreclosure sale, and when the plaintiffs were not entitled to injunctive relief because no foreclosure proceedings were pending); *Shupe v. Nationstar Mortg. LLC*, 231 F. Supp. 3d 597, 603 (E.D. Cal. 2017) (same). Accordingly, Plaintiffs' HBOR claim is **DISMISSED.** If Defendants reschedule the foreclosure sale on Plaintiffs' home, Plaintiffs may amend their complaint to add an HBOR claim.

### C. Rosenthal Act

California's Rosenthal Act is intended "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal Civ. Code § 1788.1. The Act provides that, with limited exceptions, "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of" the federal Fair Debt Collection Practices Act. Cal. Civ. Code § 1788.17. Plaintiffs allege that Defendants violated the Rosenthal Act by "ma[king] an improper and illegal debt collection call to Plaintiffs and le[aving] a voice message stating that Shellpoint was attempting to collect a debt and direct[ing] Plaintiffs to call Shellpoint directly to address the outstanding debt." (FAC ¶ 297.)

In general, alleging that a defendant foreclosed on a deed of trust does not implicate the Rosenthal Act. *See Reyes v. Wells Fargo Bank, N.A.,* 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011) (collecting cases). However, when a plaintiff's claim arises out of debt collection activities beyond the scope of the ordinary foreclosure process, a Rosenthal Act remedy may be available. *Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1164 (N.D. Cal. 2013).

Here, Plaintiffs specifically allege that Defendants left a voicemail stating that it "was attempting to collect a debt" and told Plaintiffs to call Defendants "to address the outstanding debt." (FAC ¶ 297.) Plaintiffs also cite to a June 11, 2020 letter from Defendants which cites the Rosenthal Act and states, "NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose." (FAC Ex. F at 3.) At this stage, Plaintiffs sufficiently allege that Defendants were acting outside of the ordinary foreclosure process in order to collect a debt. *See Corvello v. Wells Fargo Bank, NA,*

728 F.3d 878, 885 (9th Cir. 2013), *as amended on reh'g in part* (Sept. 23, 2013) (concluding that mortgage lender was engaged in debt collection activities under the Rosenthal Act when it offered a trial period plan with a concomitant demand for trial payments).

### D. Negligent Servicing

Plaintiffs argue that Defendants breached a duty of care owed to Plaintiffs by (1) "[f]ailing to send proper and accurate acknowledgment letters for documents received from Plaintiffs and the class members," (2) "[f]ailing to properly safeguard and account for documents received from Plaintiffs and the class members," (3) [f]ailing to assign (and keep assigned) a competent single point of contact who complied with state and federal law," (4) "[f]ailing to "exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application," (5) "[f]ailing to identify all items needed to complete and finalize the loss mitigation applications," (6) "[f]ailing to properly process the loss mitigation applications, (7) "[f]ailing to properly communicate any issues or deficiencies with said applications," (8) "[i]ssuing and recording illegal notices of default," and (9) "[i]ssuing and recording illegal notices of trustee's sale." (FAC ¶ 319.)

Defendants argue that Plaintiffs' negligent servicing claim should be dismissed because Defendants did not owe Plaintiffs a duty of care. "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (Ct. App. 1991). This principle has been extended to loan servicers as well. *Hernandez v. Select Portfolio, Inc.*, 2015 WL 3914741, at *17 (C.D. Cal. June 25, 2015) (collecting cases). However, "whether a residential lender owes a duty of care to a borrower in

connection with a residential loan modification application"—not the servicing of the loan itself—"is a subject on which the California Courts of Appeal disagree." *Id.* at *21. The Ninth Circuit and California district courts have also come to differing conclusions. *Id.* (collecting cases). Deciding whether Defendants owed Plaintiffs a duty of care in handling their loss mitigation applications is a question better decided on a more fully developed factual record. At this stage, Plaintiffs' allegation that Defendants owed them a duty of care in reviewing Plaintiffs' loss mitigation applications, (FAC ¶ 317), is sufficient to survive a motion to dismiss.

### E. UCL

Finally, Defendants argue that Plaintiffs lack standing to assert a claim under the UCL because they lack any economic injury. (Mot. at 24–25.) A plaintiff has standing to bring an action under the UCL only if he has "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. To meet this standing requirement, Plaintiffs must: "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, *i.e.*, economic injury, and (2) show that the economic injury was the result of, *i.e.*, caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Jenkins v. JPMorgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 521 (2013), *disapproved of on other grounds by Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919 (2016). When a borrower defaults on a loan before a defendant's alleged wrongful acts, the borrower does not have standing to sue under the UCL because the foreclosure proceedings are caused by the default, not the defendant's conduct. *Id.* ("As Jenkins's home was subject to nonjudicial foreclosure because of Jenkins's default on her loan, which occurred before Defendants' alleged wrongful acts, Jenkins cannot assert the impending foreclosure of her home (i.e., her alleged economic injury) was caused by Defendants' wrongful actions.").

Here, Plaintiffs concede that they defaulted on their loan. (FAC ¶¶ 51, 55.) They therefore cannot show that Defendants' alleged wrongful actions caused any injury they sustained, and lack standing to bring their UCL claim. *See Haynish v. Bank of America, N.A.*, 284 F. Supp. 3d 1037, 1052 (N.D. Cal. 2018) (finding mortgagors lacked standing for a UCL claim when the but-for cause of the foreclosure appeared to be the mortgagors' default, rather than any HBOR violation); *Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1205 (E.D. Cal. Nov. 1, 2013) (finding mortgagors lacked standing because "[f]oreclosure of the property fails to support a UCL claim in the absence of allegations of the plaintiffs' performance to avoid default").

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART.** The motion is granted in part as to Plaintiffs' claim for violation of Regulation X of RESPA, granted as to Plaintiffs' HBOR claim, denied as to Plaintiffs' Rosenthal Act claim, denied as to Plaintiffs' negligent servicing claim, and granted as to Plaintiffs' UCL claim. Plaintiffs' claim for violation of Regulation X of RESPA is **DISMISSED WITH PREJUDICE** to the extent that it is based on Defendants' response to QWRs. Plaintiff's HBOR claim is **DISMISSED WITHOUT PREJUDICE.** And Plaintiffs' UCL claim is **DISMISSED WITH PREJUDICE.** Defendants shall file an answer to Plaintiffs' FAC by July 1, 2021.

DATED:   June 17, 2021

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE